The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. The Employee is Anna Turner.
2. The Employer is Guilford County Public Defender.
3. The Self-Insured at risk is Guilford County Public Defender.
4. At all relevant times, the employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between defendant and plaintiff on or about August 13, 1997, the date of the alleged compensable injury.
5. A Pre-Trial Agreement dated March 10, 1998 was submitted by the parties and is incorporated herein by reference. In addition, the parties stipulated into evidence two pages of check stubs for short-term disability payments. Finally, the deposition of Dr. Roy was received into evidence.
 * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows
 FINDINGS OF FACT
1. Plaintiff, who is fifty-two years old, began working for defendant in June 1995 as a legal secretary for the public defender's office. Her job duties included typing legal documents, filing and mailing documents, and providing clerical support to the attorneys and the investigator in the office. Her annual salary at the time in question was $21,017.28, which generated an average weekly wage of $401.97.
2. For approximately ten years before her employment with defendant, plaintiff had been treated for rheumatoid arthritis. She had taken Prednisone, an oral steroid medication, on a number of occasions to treat flare-ups of her arthritis. Consequently, she was more susceptible to injury.
3. In early July 1997, she developed knee, ankle, thigh, and low back pain which her physician, Dr. Angela Waterman, thought was due to a flare-up of her rheumatoid arthritis. Consequently, Dr. Waterman prescribed a course of Prednisone. Her symptoms improved except for the back, hip, and thigh pain. An MRI was ordered which revealed a slightly impacted fracture of her sacrum. The source of the fracture was not clear but plaintiff attributed it to a fall she sustained while moving furniture earlier that month when she lost her balance and "sat down hard" backwards from a position of approximately 14 inches from the floor.
4. Dr. Waterman advised plaintiff that the treatment for her sacral fracture was pain medication, rest and partial weight bearing for several months, and indicated that it may take six to nine months for the symptoms to resolve. The pain was sufficiently severe that plaintiff used a cane to walk. Dr. Waterman recommended that she use a walker.
5. Plaintiff did not have adequate sick leave accrued for the time she missed from work due to her sacral fracture. Wallace Harrelson, the public defender, advised her that the department would advance her two weeks of sick leave if she would sign an agreement to repay the advance within six months. She agreed and signed the written agreement to receive the additional sick leave pay.
6. On August 1, 1997 when plaintiff saw Dr. Waterman she stated that that she was still experiencing a great deal of low back pain and that she had recently gone to the emergency room for treatment. Despite her on-going symptoms, she was planning to return to work on August 4, 1997, although she was concerned that she would not be able to do the job, especially since sitting was so uncomfortable. However, she could not financially afford to go on short-term disability.
7. Plaintiff returned to work on August 11, 1997. She left work early due to pain both that day and the next. She used a wheelchair to get into and out of the building and used her walker and cane to walk around inside the office. Although she testified that she was improving during this time, she later told Dr. Waterman's nurse that "it was hellish".
8. On August 13, 1997, plaintiff reported for work with her cane and walker. She worked at her computer that morning. At approximately 11:00 she began to get up from her chair and, in the process, fell to the floor for unclear reasons. Her friend and co-worker, Lynn Ball, came to her assistance. The receptionist, Jean Hill, also came to plaintiff's work area because she had not taken a phone call from her daughter. Ms. Ball stated that plaintiff had fallen, so Ms. Hill then advised Mr. Harrelson who directed that security be called. An ambulance was then summoned and plaintiff was taken to the hospital. At the emergency room, she was diagnosed with a left hip contusion.
9. Plaintiff then saw a family nurse practitioner at Dr. Waterman's office on August 14, 1997 and again on August 22, 1997 while Dr. Waterman was out of town. Mr. Harrelson had advised plaintiff that she would not be allowed to return to work without a written medical release, and the nurse wanted Dr. Waterman to see her before she would be allowed to go back to work. It was September 11, 1997 before Dr. Waterman examined her. At that time the doctor was of the opinion that the contusions from her August 13, 1997 fall had resolved but that she was continuing to suffer from the sacral insufficiency fracture which was slowly resolving. Dr. Waterman concluded that it was not in plaintiff's best interests to return to work until she was doing better.
10. Dr. Waterman continued to treat plaintiff for her sacral fracture and her rheumatoid arthritis. She also referred plaintiff to Dr. Levitin, a rheumatologist in the office, for further evaluation of arthritis symptoms, which were reportedly worse. He saw her in November and December 1997. She then returned to Dr. Waterman on February 4, 1998 stating that her hip and back were gradually improving, but she complained of increased pain with walking, driving, and sitting.
11. In July 1998 plaintiff began seeing Dr. Roy, a neurosurgeon. He reviewed her previous x-rays and MRI, and ordered a new MRI. The test revealed severe degenerative disease at L4-5 with left neural foraminal narrowing. He ordered physical therapy and was considering ordering epidural steroid injections. In view of her past steroid medication use for rheumatoid arthritis and the minor fall she had sustained in July 1997, he was concerned that her compression fracture had occurred due to osteopenia from steroid use, so he was also considering the advisability of a bone scan. However, he had not fully completed his evaluation of her by the time his testimony was taken in August 1998.
12. Defendant denied liability for plaintiff's August 13, 1997 injury because of some very suspicious circumstances surrounding the incident. Immediately after plaintiff was found on the floor, her friend, Ms. Ball, informed the staff present that this was a new injury so it would be covered by workers' compensation. The rest of the staff was so concerned about plaintiff's physical condition that they were concentrating on the needs of the moment and were taken aback by Ms. Ball's comments. In addition, plaintiff never gave a satisfactory explanation of why or how she fell, and there were certainly financial reasons for her to want her disability covered by workers' compensation.
13. Despite the disturbing circumstances attendant with the incident in question, the greater weight of the evidence establishes that plaintiff fell and bruised her hip at work on August 13, 1997. She thereby sustained an injury by accident arising out of and in the course of her employment with defendant. However, the injuries she sustained that day resolved by September 11, 1997 when Dr. Waterman saw her. Her continuing symptoms related back to the sacral fracture she sustained in July 1997, and her subsequent disability was due solely to her pre-existing conditions.
14. Although Dr. Roy testified to a causal relationship between plaintiff's continuing symptoms and her injury at work, he did not see her until almost a year after the accident and did not review her medical records. Dr. Waterman was in a better position as plaintiff's treating physician to determine the effects of the injury.
15. As a result of plaintiff's August 13, 1997 injury by accident, she was unable to work from August 14, 1997 through September 11, 1997. She reached maximum medical improvement by September 11, 1997 with no permanent partial disability.
16. There were good grounds for defendant to defend this claim.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On August 13, 1997, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. G.S. § 97-2 (6).
2. Plaintiff is entitled to compensation for temporary total disability at the rate of $267.98 per week for 4 and 1/7 weeks as a result of her injury by accident of August 13, 1997. G.S. §97-29.
3. Plaintiff is entitled to have defendant provide all reasonably necessary medical compensation arising from this injury by accident so long as it tends to effect a cure, provide relief, or lessen the period of disability. However, she is not entitled to have defendant provide medical treatment after September 11, 1997 in that the subsequent treatment does not relate to this injury. G.S. § 97-2(19) and G.S. § 97-25.
4. Plaintiff is not entitled to have attorney's fees assessed against defendant in that defendant was had good grounds to defend this claim. G.S. § 97-88.1.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
 AWARD
1. Defendant shall pay compensation to plaintiff at the rate of $267.98 per week for 4 and 1/7 weeks for her temporary total disability. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendant shall pay all reasonably necessary medical expenses, tending to effect a cure, provide relief or lessen the period of disability, incurred by plaintiff as a result of this injury by accident. However, defendant is not liable for the unrelated medical treatment provided after September 11, 1997.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to Ms. Kathleen Sumner.
4. Defendant shall pay the costs.
This the ___ day of March 2000.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER DCS:nwg